**The STATE of Ohio, Appellee,**

v.

**RODRIGUEZ, Appellant.**

[Cite as *State v. Rodriguez* (1992), 83 Ohio App.3d 829.]

Court of Appeals of Ohio,
Miami County.

No. 92–CA–4.

Decided Nov. 20, 1992.

830

*Jeffrey M. Welbaum,* Miami County Prosecuting Attorney, and *Jane O. Skogstrom,* Assistant Prosecuting Attorney, for appellee.

*Jose M. Lopez,* for appellant.

WOLFF, Judge.

Moses P. Rodriguez entered a plea of no contest to an amended charge of aggravated trafficking, a violation of R.C. 2925.03(A)(6), which is an aggravated felony of the second degree, and to a firearm specification to that charge. The trial court found him guilty and imposed consecutive sentences of four to fifteen years on the principal charge, three years of which was actual incarceration, and three years' actual incarceration on the firearm specification. The court also imposed a fine of $5,000 and costs.

Rodriguez's first assignment of error is that the trial court erred in overruling his motion to suppress.

■ The evidence at the suppression hearing established that on February 27, 1991, at approximately 2:55 a.m., Rodriguez was stopped by Miami County Sheriff's Deputy Doug Kirk as he drove south on Interstate 75 in Miami County, Ohio. Deputy Kirk had observed two driving infractions which prompted him to stop Rodriguez's car. Rodriguez was asked for his operator's license and informed Deputy Kirk that his license had expired. Because Rodriguez appeared "nervous" to Deputy Kirk, he called for assistance. Lt. Eugene Steinke arrived in response to the call for assistance, and he and Deputy Kirk then placed Rodriguez in the back of Deputy Kirk's cruiser. Rodriguez gave Lt. Steinke permission to obtain the automobile registration from the glove box. Thereafter, Lt. Steinke asked Rodriguez if he was transporting any guns, money, or drugs, to which Rodriguez responded that he was not. Although the testimony contains some variations of the next exchange between Lt. Steinke and Rodriguez, Lt. Steinke testified on cross-examination that "I asked if I could look at his car," and that Rodriguez responded that he "did not mind if I looked in his car." Lt. Steinke then proceeded to examine the interior of Rodriguez's car and found no contraband. On the basis of certain observations he made of the interior of the car and certain information he received from Deputy Kirk, Lt. Steinke did suspect that Rodriguez was involved in drug courier activity. Lt. Steinke unlocked the trunk of the car and unzipped a duffle bag that he found in the trunk. In the duffle bag, he found a loaded semi-automatic handgun. After discovering the weapon, Lt. Steinke instructed Deputy Kirk to handcuff Rodriguez and to arrest him for the offense of improper transportation of a firearm in a motor vehicle. Rodriguez was then transported to the jail at the Miami County Sheriff's Department, and the car was towed to the sally port at the Miami County Sheriff's Department.

According to Lt. Steinke, one of the purposes of towing the car was to continue the search of the car in more convenient surroundings than those afforded by Interstate 75 in the early morning hours. Once the car was at the sally port at the sheriff's department, $1,580 in $20 bills was found in the duffle bag. Deputy Mark Stevenson was then summoned to the sally port, together with a dog that was trained to detect narcotics. The dog was eventually put inside the car where it reacted positively in the vicinity of an interior panel in the rear of the car on the driver's side. According to Lt. Steinke, contraband was not observable upon mere visual examination of the area of the car interior where the dog had reacted positively to narcotics. According to Lt. Steinke, they removed "some of the trim off the bottom (of the panel) and looked inside and we could see a package." Lt. Steinke and Deputy Stevenson then obtained screwdrivers and removed the panel, revealing several wrapped packages of what turned out to be cocaine. Lt. Steinke testified that he thought Rodriguez had consented to the removal of the

panel. It was also determined that the panel was hinged, and wired to a button under the dashboard, which could be pressed to open the panel.

The trial court appears to have determined that the entire search of the vehicle, including the search of the trunk and the removal of the interior panel, had been consented to by Rodriguez. Furthermore, citing *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, the trial court agreed with the state that the search at the sheriff's department was justifiable as "incident to a lawful arrest (for the loaded firearm in the trunk)."

It is clear from the evidence that the discovery of the cocaine did not occur in the course of a routine or standard inventory search. The evidence does not suggest, nor does the state argue, that any exigent circumstances existed that would have excused the police from obtaining a search warrant. Finally, the state has, at oral argument, acknowledged the difficulty of justifying the search of the car at the sally port as being incident to a lawful arrest.

The state's candor is appreciated, and well advised. In *Belton*, the court considered a situation wherein a policeman stopped a car containing four occupants for speeding. He smelled marijuana, ordered the occupants out of the car, and arrested them for unlawful possession of marijuana. He searched the passenger compartment of the car, and found a jacket belonging to Belton. He unzipped a jacket pocket and found cocaine that Belton was later charged with unlawfully possessing, and which he eventually moved to suppress. Although New York's highest court determined that the cocaine had been seized unlawfully, the Supreme Court of the United States disagreed at 460–461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775:

"Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. [Court's fn. 3.]

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Court's fn. 4.]"

The court's footnote 3 states:

"Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic content. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests."

The court's footnote 4 states:

" 'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk."

Footnote 3 is of particular significance. *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 made it abundantly clear that the "search incident to lawful arrest" exception to the warrant requirement of the Fourth Amendment was confined to searches for the protection of the arresting officer and for the prevention of the destruction of evidence:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less.

"This is the principle that underlay our decision in *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. In that case three men had been arrested in a parked car, which had later been towed to a garage and searched by police. We held the search to have been unlawful under the Fourth Amendment, despite the contention that it had been incidental to a valid arrest. Our reasoning was straightforward:

" 'The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications

are absent where a search is remote in time or place from the arrest.' *Id.,* at 367, 84 S.Ct., at 883 [11 L.Ed.2d at 780]." *Id.,* 395 U.S. at 762–764, 89 S.Ct. at 2040, 23 L.Ed.2d at 693–695.

In *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, a unanimous court reaffirmed, for purposes of Ohio jurisprudence, *Chimel's* strict limitations of the "search incident to lawful arrest" exception to the warrant requirement, and disavowed any reading of *Belton* which would relax those limitations. See, particularly, *Brown* at 352–353, 588 N.E.2d at 115–116.

By the time Rodriguez's car arrived at the sheriff's department, Rodriguez was in custody and incapable of either obtaining a weapon from the car or destroying evidence within the car. The warrantless search at the sheriff's department could therefore not be justified as incident to a lawful arrest.

■ We thus turn to whether Rodriguez consented to the removal of the interior panel that revealed the presence of the several packages of cocaine. In *Florida v. Jimeno* (1991), 500 U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297, the Supreme Court had occasion to discuss the standard for measuring the scope of a suspect's consent to the search of his car:

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"

The issue in *Jimeno* was whether the suspect's general consent to a search of his car included a consent to examine a paper bag lying on the floor of his car. The Supreme Court framed the issue as being whether it was reasonable for the officer to consider the suspect's general consent to a search of his car as including consent to examine a paper bag lying on the floor of the car. 500 U.S. at ——, 111 S.Ct. at 1804, 114 L.Ed.2d at 302–303. The court determined that examination of the paper bag on the floor of the car was within the scope of the suspect's general consent to a search of his car.

In this case, Lt. Steinke testified that he thought that the permission he had received from Rodriguez to "look * * * in his car" extended to the removal of the interior panel. The trial court appears to have agreed with Lt. Steinke, noting that Rodriguez "did not limit the scope of his consent to search the motor vehicle."

In our judgment, it was not objectively reasonable for Lt. Steinke to construe Rodriguez's response that he "did not mind if I looked in his car" as a consent to Lt. Steinke's removing the interior panel to locate contraband.

In *Jimeno*, the Supreme Court of the United States reversed the Supreme Court of Florida which had affirmed the suppression order entered by the trial court. The Supreme Court of Florida had affirmed on the basis of *State v. Wells* (1989), 539 So.2d 464. In reversing, the Supreme Court of the United States distinguished the facts in *Jimeno* from those in *Wells:*

"The facts of this case are therefore different from those in *State v. Wells, supra,* on which the Supreme Court of Florida relied in affirming the suppression order in this case. There the Supreme Court of Florida held that consent to search the trunk of a car did not include authorization to pry open a locked briefcase found inside the trunk. It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." *Jimeno*, 500 U.S. at ——, 111 S.Ct. at 1804, 114 L.Ed.2d at 303.

The Supreme Court of the United States did not criticize the opinion of the Supreme Court of Florida in *Wells.* Indeed, it observed that it was "very likely unreasonable" for an officer to think that a suspect's consent to a search of his trunk was a consent to breaking open a locked briefcase found inside the trunk. Here, the discovery of the cocaine required some dismantling of the car, in that Lt. Steinke and Deputy Stevenson used screwdrivers to remove the interior panel. Given these facts, we are constrained to conclude that it is "very likely unreasonable" to think that Rodriguez, by saying he "did not mind if I (Lt. Steinke) looked in his car," agreed to Lt. Steinke's and Deputy Stevenson's using screwdrivers to remove the interior panel—indeed, to their dismantling his car— to search for contraband, particularly after Rodriguez, when asked by Lt. Steinke, had denied that there were guns, money, or drugs in the car.

Accordingly, we conclude as a matter of law that the evidence does not support the trial court's determination that Rodriguez consented to the removal of the interior panel. Given the absence of a search warrant, or any recognized exception to the search warrant requirement, the removal of the interior panel was impermissible under the Fourth Amendment. We must therefore sustain Rodriguez's first assignment of error.

In that Rodriguez was not charged with a separate offense involving the weapon, it is unnecessary for us to consider the propriety of the search of the trunk and of the duffle bag found in the trunk.

■ In his second assignment of error, Rodriguez asserts that the trial court erred in determining that R.C. 2945.141 applies in a situation where the firearm is in a locked trunk and inaccessible to the defendant.

A conviction of a firearm specification can only exist in conjunction with a conviction of a felony. See R.C. 2929.71(A)(1). In view of our disposition of the

first assignment of error, the second assignment of error is rendered moot and is accordingly overruled.  See App.R.  12(A)(1)(c).

Pursuant to our disposition of Rodriguez's first assignment of error, the judgment of conviction is reversed, and Rodriguez is discharged.

*Judgment reversed.*

WILSON and GRADY, JJ., concur.