DECISION.
Defendant-appellant Kenneth Richardson was charged with possession of 11.46 grams of crack cocaine,[1] having a concealed gun at hand,[2]
and possessing the gun while under the disability of a prior violent felony conviction.[3] A jury acquitted Richardson of possessing the crack cocaine, but found him guilty of the two gun-related charges. Richardson now appeals his convictions. He claims first that the trial court erred in failing to suppress the gun at trial, because it was seized during an unconstitutional search. Second, Richardson contends that his conviction for having a concealed weapon at hand was based only on circumstantial evidence, and was contrary to the direct evidence he introduced at trial. He claims therefore that the conviction was against the manifest weight of the evidence. We overrule both assignments of error and affirm.
During a routine patrol at approximately 3:30 AM, two Cincinnati police officers saw a car parked in a residential driveway. The windshield of the car was shattered to such a degree that it appeared that the car could not have been driven safely. And though the car was stationary, the officers saw two occupants. The officers also observed outside the car a third person who ducked behind the car as the officers drove by. The officers turned around, parked their patrol car, and approached the stationary vehicle on foot to investigate.
Initially, the officers spoke with the person outside the parked car, and after a brief pat-down search, they discovered that she had a crack pipe. She was then placed in the patrol car and made statements that led the officers to more thoroughly investigate the car's occupants. The officers asked for identification from the two occupants of the car, and a routine check revealed that both had outstanding warrants for their arrest. Richardson's warrant was for harboring a pit bull. The officers decided to remove the occupants from the parked car and to arrest them.
Richardson was in the driver's seat, and the car was parked so close to the porch of an adjacent home that the driver's door would not open. For this reason, the officers decided to remove the passenger first. While he got out of the car, one of the officers later testified, Richardson began making movements towards the floor of the driver's side of the car, despite admonitions to keep his hands in view.
Once the occupant on the passenger's side was secured, the officers determined that, in the interests of safety, it would be best to have Richardson get out of the car from the driver's side, rather than to have him crawl across the interior of the car. The officers accordingly pushed the car forward until the driver's door could clear the adjacent porch, and Richardson got out of the car on the driver's side. When Richardson was secured, an officer looked at the driver's-side floorboard, in the area that Richardson had been seen to have been reaching, and saw, amongst a great deal of trash, the handle of a gun.
The officer retrieved the gun, removed the loaded clip and a cartridge from the firing chamber, and later had the gun test-fired at a police station to prove that it was operational. At trial, the passenger's-side occupant claimed that he had purchased the gun from an unknown source earlier in the day and that he had placed the gun in the car without Richardson's knowledge. But he was mistaken at trial about the position in which the gun had been found.
The officers also summoned a canine unit. The dog sniffed around the car, and its handler later testified that the dog had indicated that drugs were on the driver's-side floorboard. One officer, after rummaging through layers of trash and some general debris, found, near a rolled-up floor mat, what was later admitted into evidence as 11.46 grams of crack cocaine.
As the investigation proceeded, it was determined that the entire episode had taken place on the property of Richardson's mother. The owner of the car, on the other hand, was never identified during the arrest or at trial. In the trial court, three witnesses for Richardson, and Richardson himself, provided contradictory testimony regarding the mysterious owner of the car, his relationship to the Richardson family, and the circumstances under which the car had come to be a stationary fixture at the Richardson residence. In one version, the car was simply abandoned by a man who had just had a fight with his girlfriend. In another, the car was there for the installation of a new stereo, though no price had been agreed upon, no money had changed hands, no pick-up date had been arranged, and the owner's name and address were unknown. Regardless of the reason why the car had been left there, none of the witnesses knew when the owner planned to return for the car, and each claimed to know little more than that his name was "Jessie." When pressed for further details, one witness conjectured that Jessie's last name was "James." And "Jessie James" was also said to have been the name of the man who sold Richardson the pit bull that was the subject of Richardson's outstanding warrant.
Prior to trial, the court overruled Richardson's motion to suppress the crack cocaine and the gun. But because Richardson was acquitted of the cocaine possession, he now focuses his appellate challenge on the gun. He claims that because the officers moved the car without his consent and only thereby gained a position from which the gun was clearly visible, the warrantless search was not justified by the plain-view doctrine. We disagree and uphold the trial court's decision to overrule Richardson's motion to suppress.
Initially, we are compelled to note that nothing in the record supports Richardson's standing to object to the warrantless search of the car he occupied. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution provide protection from unreasonable searches and seizures by the government. But to claim that protection, Richardson must have had a reasonable expectation of privacy in the car.[4] Richardson need not have proved that he owned the car to establish his reasonable expectation of privacy — he need only have demonstrated that he had the owner's permission to use the vehicle.[5]
Because of the inconsistencies and confusion in the record regarding the identity of the car's owner, the record does not demonstrate that Richardson owned the car or had the owner's permission to use it. He thus had no reasonable expectation of privacy in the car. But while Richardson had the burden to demonstrate standing,[6] the issue never arose in the trial court because the state never raised it.[7] We are consequently constrained to assume for the purposes of this appeal that Richardson had standing to contest a search of the car.
"Searches conducted outside the judicial process, without prior approval of a judge or magistrate, are per se unreasonable * * * [and] * * * subject only to a few specially established and well-delineated exceptions."[8] One such exception is the plain-view doctrine.[9] The basis of the plain-view doctrine is that "once police are lawfully in a position to observe an item first hand, its owner's privacy interest in that item is lost."[10]
Another exception to the warrant requirement is a search incident to a lawful custodial arrest.[11] The basis for this exception is concern for an arresting officer's safety and the need to preserve evanescent evidence.[12] These concerns justify an infringement on the arrestee's privacy interest when the passenger compartment of a car is searched contemporaneous to an occupant's arrest.[13]
The trial court overruled Richardson's motion to suppress on the basis of the plain-view doctrine, and Richardson now argues on appeal that the court erred in holding that the plain-view doctrine was applicable. The state, on the other hand, emphasizes in its brief that the trial court's ruling should be affirmed because the search was incident to a lawful custodial arrest. But the United States Supreme Court case upon which the state relies has been given a limited reach by the Supreme Court of Ohio's recognition of the extra protections provided by the Ohio Constitution.[14] And while this court has held that the Ohio case itself should be limited to its own particular facts,[15] other appellate courts have interpreted its constraints on searches more expansively.[16] We see no reason to embroil our decision today in a series of cases purporting to limit a preceding case to its particular facts, when the plain-view doctrine is otherwise clearly applicable. We thus uphold the trial court's decision because the gun was lawfully seized under the plain-view doctrine.
Because Richardson' first assignment of error is based on theFourth Amendment to the United States Constitution, there is a two-part test to determine whether the evidence was lawfully seized under the plain-view exception to the general requirement for a search warrant. The state had to show that the initial intrusion that afforded the authorities the plain view was lawful, and that the incriminating nature of the evidence was immediately apparent.[17] In this case, Richardson complains only that moving the vehicle in which he was sitting was an unlawful intrusion. We assume therefore that Richardson is contending that pushing the car forward to facilitate his arrest was inherently unlawful. This argument, however, is without merit.
Richardson cites no authority to support the proposition that moving a stationary car to facilitate the custodial arrest of an occupant is inherently illegal. We have found no such authority independently, and instead believe that the officers here acted prudently and legally. Richardson was sitting on the driver's side of the car when the officers approached. He could not get out of the car by opening the driver's-side door because the car was parked too close to the porch. In fact, Richardson testified that he had gotten into the car earlier by jumping from the porch through the open driver's-side window.
Further, one officer testified that Richardson was reaching down towards the floor mat, with his hands out of view, while the other occupant of the car was removed for arrest. And that officer testified that he did not have Richardson pull the car forward under its own power because of the risk of flight. Under these circumstances, the officer's decision to push the car forward, so that Richardson would not have to move through the interior of the car to get out on the passenger side, was not inherently an unlawful intrusion. Such contortions would have potentially and unnecessarily given Richardson access to weapons and would have restricted the officers' view during the process. We will not require that officers expose themselves to unnecessary risks during an arrest.
Richardson also seems to question the officers' motivation in moving the car forward. While inadvertence of discovery is no longer a requirement of the plain-view exception, at least under theFourth Amendment to the United States Constitution, "inadvertence is a characteristic of most legitimate `plain view' seizures."[18] This means that the officers, acting characteristically pursuant to a legitimate plain-view seizure, would not have planned an arrest merely to maneuver themselves within plain view of the object they wanted.[19]
But, as discussed above, there is ample evidence in the record that the officers were acting with reasonable concern for their safety and the safety of others. Since pushing the car forward was not an attempt to gain a clearer view of the interior of the car, the discovery of the gun in plain view was in character with most legitimate plain-view seizures. Richardson's first assignment of error is overruled.
In his next assignment of error, Richardson argues that his conviction was against the manifest weight of the evidence. Richardson thereby tacitly admits that circumstantial evidence presented at trial tended to show that he knowingly possessed the gun on the floorboard of the car. But, at trial, the other occupant of the car testified that he had purchased the gun earlier in the day and placed it in the car without Richardson's knowledge. Richardson believes that this direct testimony, in addition to his own testimony denying knowledge of the gun's presence, manifestly outweighed any circumstantial evidence to the contrary.
Implicit in Richardson's argument is the supposition that a jury must afford greater weight to direct evidence than to circumstantial evidence. But this is not the law. "Circumstantial evidence and direct evidence inherently possess the same probative value."[20] In fact, "`[c]ircumstantial evidence * * * may be more certain, satisfying and persuasive than direct evidence.'"[21]
A challenge to a jury's verdict on the manifest weight of the evidence requires us to weigh the evidence and all reasonable inferences, to consider witness credibility, and to determine whether, in resolving conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice.[22] Richardson's jury did not lose its way. The jury was entitled to disbelieve the improbable, though direct, testimony offered by Richardson's witness.
According to the witness's testimony, he (1) purchased a loaded semi-automatic handgun for approximately 10% of its value; (2) did not know the supplier; and (3) had partially concealed the gun in an open car whose owner he also did not know. In addition, the position in which the witness said that he had placed the gun in the car was in conflict with testimony regarding the position of the gun when it was found. Moreover, the witness did not claim ownership of the gun until Richardson's trial.
Richardson's second assignment of error is overruled, and the judgment of the trial court is accordingly affirmed.
 ___________________ Painter, Presiding Judge.
 Sundermann and Winkler, JJ., concur.
[1] See R.C. 2925.11(A) and 2925.11(C)(4)(d).
[2] See R.C. 2923.12(A).
[3] See R.C. 2923.13(A)(2).
[4] See Rawlings v. Kentucky (1980). 448 U.S. 98, 104, 100 S.Ct. 2556,2561, citing Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507;Rakas v. Illinois (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 430; State v.Williams (1995), 73 Ohio St.3d 153, 166, 652 N.E.2d 721, 732-733.
[5] See State v. Carter (1994), 69 Ohio St.3d 57, 63, 630 N.E.2d 355,360-361, citing United States v. Rubio-Rivera (C.A.10, 1990),917 F.2d 1271, 1275.
[6] See State v. Williams, supra, at 166, 652 N.E.2d at 733.
[7] See State v. Barfield (Sept. 10, 1999), Ross App. No. 98CA2454, unreported; State v. Henderson (Nov. 7, 1997), Montgomery App. No. 16016, unreported, citing State v. Ballard (Aug. 29, 1997), Montgomery App. No. 16174, unreported. But, see, State v. Emerick (June 6, 1997), Montgomery App. No. 15768, unreported (even though state did not raise standing, trial court had authority to address the issue based on undisputed evidence in the record).
[8] See State v. Halczyszak (1986), 25 Ohio St.3d 301, 303,497 N.E.2d 925, 929-930, quoting Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 514.
[9] See State v. Halczyszak, supra, at 303, 496 N.E.2d at 930, citingCoolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022.
[10] See State v. Halczyszak, supra, quoting Illinois v. Andreas
(1983), 463 U.S. 765, 771, 103 S.Ct. 3319, 3324.
[11] See New York v. Belton (1981), 453 U.S. 454, 457, 101 S.Ct. 2860,2862, citing Chimel v. California (1969), 395 U.S. 752,89 S.Ct. 2034.
[12] See New York v. Belton, supra.
[13] See New York v. Belton, supra.
[14] See State v. Brown (1992), 63 Ohio St.3d 349, 588 N.E.2d 113.
[15] See State v. Murrell (Aug. 25, 2000), Hamilton App. No. C-000103, unreported; State v. Pugh (Aug. 11, 2000), Hamilton App. No. C-990867, unreported.
[16] See State v. Corrado (Dec. 19, 1997), Lake App. No. 96-L-104, unreported, citing State v. Hines (1993), 92 Ohio App.3d 163,634 N.E.2d 654, State v. Rodriguez (1992), 83 Ohio App.3d 829,615 N.E.2d 1094, and State v. Davidson (1992), 82 Ohio App.3d 282,611 N.E.2d 889.
[17] See State v. Waddy (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819,833, citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 466,91 S.Ct. 2022, 2038; Horton v. California (1990), 496 U.S. 128,110 S.Ct. 2301. See, also, Cincinnati v. Langan (1994), 94 Ohio App.3d 22,640 N.E.2d 200, fn. 4.
[18] See Horton v. California (1990), 496 U.S. 128, 130,110 S.Ct. 2301, 2304.
[19] See State v. Halczyszak (1986), 25 Ohio St.3d 301, 303,496 N.E.2d 925, 930, quoting Coolidge v. New Hampshire (1971),403 U.S. 443, 470, 91 S.Ct. 2022, 2040, fn. 26.
[20] See State v. Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492,502.
[21] See State v. Lott (1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293,302, quoting Michalic v. Cleveland Tankers, Inc. (1960), 364 U.S. 325,330, 81 S.Ct. 6, 10, citing Rogers v. Missouri Pacific RR. Co. (1957),352 U.S. 500, 508, 77 S.Ct. 443, 449, fn. 17.
[22] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546, citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720.