THOMAS R. WRIGHT, J.
*769 {¶ 1} Appellant, William T. Ferrell, appeals his convictions for possession of heroin and a drug abuse instrument following his no contest plea. He argues the trial court erred in denying his motion to suppress. We agree and reverse and remand.
{¶ 2} Ferrell was a backseat passenger of a friend's car when she was pulled over for a marked lanes violation. Ferrell remained seated in the backseat while officers removed the driver of the vehicle and conducted a pat down. She then authorized a search of her vehicle.
{¶ 3} An officer then asked Ferrell to exit the car. She also asked him if he had anything in his pockets. Ferrell responded in the negative, and the officer then asked if Ferrell minded if the other officer checked. Ferrell agreed. A search of his pockets revealed nothing. The officer proceeded to search his socks and found something white. The officer then placed Ferrell in handcuffs. Upon questioning, Ferrell ultimately informed the officer the item in his sock contained heroin, and upon further questioning, he also admitted to having a "rig" in his backpack, which was still in the car.
{¶ 4} He was indicted and charged with possession of heroin, a fifth-degree felony, in violation of R.C. 2925.11(A)(C)(6) and possession of drug abuse instruments, a second-degree misdemeanor, in violation of R.C. 2925.12(A)(2).
{¶ 5} Ferrell moved to suppress evidence of the drugs as violative of the Fourth Amendment right to be free from unreasonable searches. He also sought exclusion of his statements after the search, including his admission that he had heroin in his sock and a hypodermic needle in his backpack because he was not informed of his Miranda rights in violation of the right against self-incrimination in the Fifth Amendment.
{¶ 6} Following a hearing, the trial court overruled his motion and found that upon viewing the totality of the circumstances, the entire search was consensual. The court explained that Ferrell did not limit or withdraw consent to have his socks searched. The trial court likewise found that Ferrell's statements were admissible, explaining that because he consented to the search, any statements stemming from that search were admissible. The trial court's decision does not, however, address Ferrell's Miranda argument and does not analyze whether his incriminating statements were the product of a custodial interrogation.
{¶ 7} Ferrell raises one assigned error:
{¶ 8} "The trial court erred as a matter of law in overruling Appellant's Motion to Suppress Evidence."
{¶ 9} Appellate review of a motion to suppress evidence involves mixed questions of law and fact. State v. Long , 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact *770 and evaluate the credibility of witnesses. State v. Fanning , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. State v. Medcalf , 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). Appellate courts then independently assess as a matter of law whether the trial court properly applied the substantive law to the facts of the case. State v. Hoppert , 181 Ohio App.3d 787, 2009-Ohio-1785, 910 N.E.2d 1106, ¶ 11 (8th Dist.).
{¶ 10} Ferrell's alleged error consists of three sub-arguments. First, he claims Officer Samantha Burton lacked a specific and articulable suspicion that Ferrell had a weapon, sufficient to warrant his removal from the car and a pat down for weapons. However, the court did not find that this was a pat down search for weapons authorized pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Instead, the court found that the search was consensual, and Officer Burton testified at the hearing that she did not suspect or believe that Ferrell had a weapon. Thus, this sub-argument lacks merit.
{¶ 11} Ferrell's second sub-argument asserts that the scope of his consent to be searched was limited to his pockets, and because the drugs were found in his sock, the officers exceeded the scope of the consent and the contraband should have been suppressed. We agree.
{¶ 12} The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. A search based on consent is one exception to the Fourth Amendment's general warrant requirement. State v. Robinette , 80 Ohio St.3d 234, 243, 685 N.E.2d 762 (1997). When the state seeks to rely upon consent to justify a search, it has the burden of establishing that the consent was voluntary and freely given. Id.
{¶ 13} "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (Citations omitted.) Florida v. Jimeno , 500 U.S. 248, 250-51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).
{¶ 14} A dashcam video recording of the stop was played at the suppression hearing. It reveals that Ferrell was in the backseat of his friend's car when she was pulled over for a traffic violation. Three officers were present. The driver agreed to a search of her vehicle.
{¶ 15} Thereafter, Officer Samantha Burton of the Kent Police Department asked Ferrell his name and if he would mind stepping out of the car. He complied. Burton then asked him, "got anything in your pockets?" to which he responded "nope." Burton then directed him toward one of two male officers present at the scene and inquired, "do you mind if this officer checks?" Ferrell says "ok," and he walks into the grass where a male officer is standing. Ferrell's hands are in the air. The male officer, Officer Bowen, then has Ferrell place his hands behind his back and asks him if he has "anything illegal? Sharp? Needles? Knives?" Ferrell responds negatively to each inquiry. Bowen is then seen searching Ferrell's pockets for approximately two minutes. Bowen then bends down and looks in Ferrell's socks, and finds something white. Upon repeatedly questioning Ferrell about what is in his sock, Ferrell responds "dope" and then confirms that it is heroin.
*771 {¶ 16} Bowen then asks Ferrell if he has a "rig" on him, which is slang for a hypodermic needle and syringe used to inject heroin, or if he has one in the car. Ferrell eventually admits that he has one in his backpack, which was still in the car.
{¶ 17} In Jimeno , the United States Supreme Court considered whether the driver's oral consent to search his car included consent to search a brown paper bag found on the floor of the car. The Court decided it did and explained that objective reasonableness dictates the scope of the authorized search, and "[t]he scope of a search is generally defined by its expressed object * * *." Id. at 251, 111 S.Ct. 1801. In Jimeno , officers were granted consent to search the car for narcotics. The court reasoned that this reasonably included containers in the car that a reasonable person would believe would contain drugs. Id. The court, however, noted that the scope of the search would not have included a search of a locked suitcase in the car because it is unreasonable to think that a suspect's consent to search a vehicle includes locked containers. Id. at 252, 111 S.Ct. 1801.
{¶ 18} In State v. Arrington , 96 Ohio App.3d 375, 645 N.E.2d 96 (12th Dist.1994), the 12th District Appellate Court held that the driver's consent to an officer's request to search her purse for weapons did not permit the officer to search a cigarette case in her purse because a search for weapons would not have reasonably included a cigarette container. Id. at 378, 645 N.E.2d 96.
{¶ 19} In State v. Rodriguez , 83 Ohio App.3d 829, 615 N.E.2d 1094 (2d Dist.1992), the Second Appellate District found that a defendant's agreement that police may "look in his car" did not authorize police to remove interior panels. This overly broad construction of his agreement to allow his car to be searched was not objectively reasonable. Id. at 834, 615 N.E.2d 1094.
{¶ 20} Here, the question is whether it was reasonable for the officers to consider Ferrell's consent to search his pockets as including consent to examine the contents of his socks. It was not. Ferrell was asked if he had anything in his pockets and was then almost immediately asked if he minded if the other officer checked. Ferrell responded ok. Upon seeking consent to search, Officer Burton did not identify the object of the search, and she limited her request to Ferrell's pockets. His agreement to be searched, and the scope of the search, was limited by the officer's question.
{¶ 21} There was no further consent sought by the officers and Ferrell did not volunteer to extend the scope of his consent. Contrary to the state's argument and the trial court's finding, his failure to object and stop the search of his socks does not equate with consent, and the typical reasonable person would understand by the exchange between the officers and Ferrell that his consent to be searched was limited to his pockets.
{¶ 22} Furthermore, Officer Bowen's inquiries as to whether Ferrell had anything illegal, sharp, or if he had knives or needles did not extend the scope of Ferrell's consent because Bowen's inquiries were not preceded by a request for Ferrell to agree to be searched for these items. Our independent review of the undisputed evidence depicted in the dashcam footage does not support the trial court's determination that Ferrell consented to a search of his socks.
{¶ 23} Thus, because the officer exceeded the scope of Ferrell's consent to search, the trial court should have suppressed the heroin in his sock found via the unlawful search. Accordingly, Ferrell's second sub-argument has merit.
*772 {¶ 24} Ferrell's third and final sub-argument asserts that his custodial statements to the officers following his unlawful search should have been suppressed because he was not advised of his Miranda warnings. He seeks suppression of his admission that the substance in his sock was heroin as well as his statement to officers that he had a "rig" in his backpack.
{¶ 25} The trial court found that Ferrell's statements were admissible because Ferrell consented to be searched. Consent to be searched, however, is not determinative of whether one's statements are admissible. Instead, Miranda warnings are required when an individual is subject to a custodial interrogation even if the attendant search is wholly consensual. The determinative issue governing whether Miranda warnings are required is whether the suspect is "in custody."
{¶ 26} "[T]he Fifth Amendment privilege * * * serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. * * * [W]ithout proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Miranda v. Arizona , 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
{¶ 27} Thus, Miranda warnings must be provided when a defendant is subject to a custodial interrogation. Id. A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444, 86 S.Ct. 1602.
{¶ 28} The roadside questioning of a motorist detained pursuant to a routine traffic stop does not usually constitute a custodial interrogation and invoke the requirement that the driver be read his Miranda warnings. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The "noncoercive aspect of ordinary traffic stops prompt us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda. " Id. Instead, the Miranda safeguards are implicated when "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " Id. quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). "It is not a detainee's freedom of movement that makes a traffic stop constitutionally unoffensive. It is, instead, the relative brevity, limited scope, and non-threatening character of the police intrusion." State v. Wineberg, 2d Dist. Clark No. 97-CA-58, 1998 WL 409021 *5 (Mar. 27, 1998), citing Berkemer.
{¶ 29} There is no bright-line rule to employ in determining whether Miranda warnings are required. Instead, a fact-specific inquiry must be applied to the facts in each case to assess whether an individual during a traffic stop is "in custody" such that Miranda warnings are required. Cleveland v. Oles , --- Ohio St.3d ----, 2017-Ohio-5834, --- N.E.3d ----, ¶ 21.
{¶ 30} "[T]he relevant inquiry is whether a reasonable person in the suspect's position would have understood himself or herself to be in custody. This nuance is important and well reasoned. If the *773 inquiry were whether the driver felt free to leave, then every traffic stop could be considered a custodial interrogation because 'few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so,' * * *. And a law-enforcement officer, in the midst of investigating a traffic stop and performing all its attendant procedures, would not consider a driver free to leave unless given permission. But 'not free to leave' and 'in custody' are distinct concepts.
{¶ 31} "For purposes of the constitutional privilege against self-incrimination, the test is not whether the individual feels free to leave but whether the situation 'exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.' * * *." (Emphasis sic.) Id. at ¶ 30-31.
{¶ 32} Here, Ferrell was a backseat passenger in a car following a traffic stop. The driver consented to a search of her vehicle. Ferrell agreed to a search of his pockets, not his sock where the heroin was found.
{¶ 33} Upon finding the item in his sock, Officer Bowen twice asks Ferrell what was in his sock. Ferrell does not respond. Bowen then places handcuffs on Ferrell and informs him he "has to" because he does not know what was in his sock. They are still on the side of the road with two other officers present.
{¶ 34} After placing handcuffs on Ferrell, Bowen again asks him if he is going to tell him what was in his sock. Bowen then asks Ferrell if he is, "gonna be honest with me upfront, or are you gonna make it hard on yourself?" Bowen then says, "I'm a nice guy as long as people are honest." Ferrell then admits that the baggie contains "dope." Bowen asks what kind of dope, and in response, Ferrell tells him it is heroin.
{¶ 35} Bowen then asks, "got a rig on you?" Ferrell answers no. Bowen then twice asks if Ferrell has a rig in the car and explains that the officers do not want to get poked or pricked. He also tells Ferrell that a rig is the least of his worries. Ferrell thereafter admits he has one in his backpack in the car, and a hypodermic needle is later found in his backpack.
{¶ 36} As stated, Ferrell was subsequently indicted and charged with possession of a drug abuse instrument to which he pleaded no contest.
{¶ 37} Considering the totality of the circumstances, Ferrell was "in custody" at the time he admitted that the substance found in his sock was dope and heroin and when he admitted to having a rig in his backpack. Although he was in a public place, he was handcuffed after an officer found something hidden in his sock. The officer told him he "had to" place him in handcuffs because he did not know what he had found, but the officer did not inform him that he was not under arrest. And only after Ferrell was in handcuffs, did he respond to the officer's third request to tell him what was in his sock. The interaction at this point ceased to be an investigative traffic stop. A reasonable person in Ferrell's position would have understood himself to be in custody. Cleveland v. Oles, --- Ohio St.3d ----, 2017-Ohio-5834, --- N.E.3d ----, ¶ 28 (finding Oles not in custody when he was not in handcuffs and since police questioning was not overly repetitive or designed to pressure an admission.) And because Ferrell's statements were made in response to officer inquiries while he was in custody, Miranda warnings were required.
{¶ 38} The state urges us to find that there is an officer and public safety *774 exception to the Miranda warning requirement that applies here, yet it cites no authority for this proposition of law. It likewise did not raise this exception at the suppression hearing.
{¶ 39} Under Miranda, supra, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444, 104 S.Ct. 3138. "However, when officers ask 'questions necessary to secure their own safety or the safety of the public' as opposed to 'questions designed solely to elicit testimonial evidence from a suspect,' they do not need to provide the warnings required by Miranda . New York v. Quarles, 467 U.S. 649, 659, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984)." State v. Maxwell, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 113.
{¶ 40} Both the U.S. and Ohio Supreme Courts have applied the public and officer safety exception to the Miranda warning requirement in cases in which police asked a suspect if he has a weapon. In Quarles , the U.S. Supreme Court applied this exception to the Miranda requirement when an officer cuffed a suspect after a pursuit in a supermarket. The suspect had an empty holster, and before reading him his rights, the officer asked him where the gun was. New York v. Quarles, 467 U.S. 649, 652, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).
{¶ 41} In Maxwell , officers executing an arrest warrant found the suspect hiding in a crawlspace and for their safety, inquired if he had a weapon or had one near him. The Ohio Supreme Court held that the public safety exception to Miranda did not apply because the officers had already confirmed that no one else was in the home and Maxwell was in handcuffs at the time of the inquiry. Id. Nevertheless, the court found that the admission of his statements in response was harmless error. Id. at ¶ 122-123.
{¶ 42} The Maxwell court adopted the following test to employ upon considering whether the public-safety exception to the Miranda requirement applies:
{¶ 43} "In United States v. Williams, 483 F.3d 425, 428 (6th Cir.2007), the United States Court of Appeals for the Sixth Circuit set forth the standard that the government must satisfy in order for custodial statements made before any Miranda warnings to be admissible under the Quarles public-safety exception. 'For an officer to have a reasonable belief that he is in danger,' and thus for the exception to apply, 'he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it.' Id. at 428. Williams stated that this evaluation of the applicability of the Quarles exception 'takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest.' Id. " (Footnote omitted.) Maxwell at ¶ 117.
{¶ 44} Here, Officer Bowen asked Ferrell if he had a needle used for administering heroin because the officers did not want to get stuck or pricked.
{¶ 45} In State v. Strozier, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 10 (2nd Dist.), the Second District Court of Appeals applied the officer and public safety exception when officers were asking a suspect about possession of dangerous drug paraphernalia that may have pricked or stuck the officer. The court *775 explained that the officer testified about his concern about being stuck or pricked while conducting the pat-down search. Id. at ¶ 11. The court found the public safety exception should apply to situations in which officers inquire about needles that may cause them harm, but that the officer's inquiry in the case before it was too broad since he had asked "Do you have anything on you I need to know about? Anything that might stick me?" Id. at ¶ 10.
{¶ 46} Strozier , however, was decided before the Ohio Supreme Court's decision in Maxwell in which it adopted the Sixth Circuit's two-part test. And upon applying the test to the instant case, there was no testimony that Ferrell had a weapon and no testimony that someone other than the police would gain access to a weapon. In fact, Officer Burton testified that she did not suspect that Ferrell was armed. Thus, the public safety exception to Miranda does not apply. Maxwell, supra.
{¶ 47} Accordingly, a constitutional violation occurred when officers failed to advise Ferrell of his Miranda rights once they placed him in handcuffs, and as such, his subsequent admissions that his sock contained dope and that the dope was heroin should have been suppressed. Ferrell's other admission that he had a hypodermic needle in his backpack was also in violation of his right against self-incrimination. Thus, Ferrell's third sub-argument has merit.
{¶ 48} The trial court's decision is reversed and the case is remanded.
COLLEEN MARY O'TOOLE, J., concurs,
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.
{¶ 49} I respectfully dissent and would affirm the trial court's denial of Ferrell's motion to suppress. The majority interprets the scope of Ferrell's consent to be searched as limited to his pockets. A review of the video, however, demonstrates that neither Ferrell nor the officers involved shared the majority's interpretation.
{¶ 50} By the time Ferrell was removed from the vehicle, the driver and another passenger had already been removed and had already been searched. In both cases, the search was a pat-down or frisk type of search. The passenger was arrested on an outstanding warrant while the driver was asked to remain outside the vehicle.
{¶ 51} Officer Burton then asks if Ferrell would step out of the car. He complies. She asks if he has anything in his pockets. He says that he does not. She asks if he would stand over by the sidewalk. He complies. She asks whether he minds if another officer "checks." He replies that he does not mind. Officer Bowen then asks if Ferrell has anything sharp, needles, or knives. Ferrell denies that he does. (Incidentally, Ferrell's replies to the officers' queries have all been truthful.) Officer Bowen then searches Ferrell in the same manner that the driver and other passenger had just been searched.
{¶ 52} Viewing the video of this encounter, it is evident that, when Officer Burton asked Ferrell if he minded if Officer Bowen "checks," she did not intend to limit the search to Ferrell's pockets. It is equally evident that, when Ferrell gave his consent, he did not believe that he was limiting the scope of the search to his pockets. Officer Bowen only asked whether he minded if the officer "checks." She did not say "checks your pockets."
{¶ 53} If contract law applied, the majority would have a colorable argument that there might not have been a meeting *776 of the minds with respect to a general search for anything sharp, needles, or knives. In the context of Fourth Amendment jurisprudence, however, "[t]he question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." State v. Roberts , 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 99.
{¶ 54} When one considers the totality of the circumstances as represented in the video, rather than merely parsing the language of the transcript, it is clear that the search of Ferrell was consensual and not the product of any duress, coercion, or overreaching on the part of the police officers. Given this, the majority's decision to reverse the trial court neither serves to advance any of the interests protected by the Fourth Amendment nor promote the ends of justice. Illinois v. Gates , 462 U.S. 213, 246-247, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (White, J., concurring) ("[t]he exclusion of probative evidence where the constable has not blundered not only sets the criminal free but also fails to serve any constitutional interest in securing compliance with the important requirements of the Fourth Amendment").
{¶ 55} Accordingly, I respectfully dissent.