[Cite as *State v. Jones*, 2019-Ohio-4649.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-059** |
| JOSHUA C. JONES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 001184.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Melissa Ann Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Joshua C. Jones, appeals the denial of his motion to suppress incriminatory statements made to police after his arrest. He argues the statements are the product of custodial interrogation before he was informed of his *Miranda* rights. We affirm.

{¶2} Patrolman Bruno of the City of Willowick Police Department, while on traffic patrol, pulled behind appellant's vehicle and ran his plates through a mobile data terminal

which alerted Bruno that appellant's driver's license was suspended and there was a warrant for his arrest. The data terminal also provided a copy of appellant's BMV photograph. Bruno confirmed that appellant matched the BMV photo by pulling beside him. Thereafter, Bruno executed a traffic stop.

{¶3} To avoid traffic, Bruno approached appellant's vehicle on the passenger side. Appellant had two passengers, both seated on the passenger side, one in the front seat and one in the back. Bruno asked to see appellant's driver's license. Bruno then asked the passengers for identification and shortly thereafter saw appellant drop a plastic baggie into the console area between the two front seats. Bruno asked appellant what he dropped, but he denied dropping anything. Bruno ordered appellant to place his hands on the steering wheel and the front seat passenger to place his hands on the dashboard. A second officer arrived to assist. Together, the officers removed appellant from his vehicle, placed him under arrest, and secured him in the back seat of Bruno's cruiser.

{¶4} As the second officer was completing the arrest, Bruno searched the front console area. He soon found the plastic baggie containing several smaller plastic baggies each containing a white, rock-like substance. After examination, Bruno showed them to appellant. The following exchange was recorded on the officer's bodycam:

{¶5} "OFFICER BRUNO: This is what you had in your hand that you dropped in the center console.

{¶6} "THE DEFENDANT: Yes, that's mine.

{¶7} "OFFICER BRUNO: I know its yours. I saw it, dude.

{¶8} "THE DEFENDANT: That's mine."

{¶9} After walking away from the cruiser, Bruno returned and asked appellant if the baggies contained crack cocaine. Appellant said he found the big baggie and did not

2

know what was inside the smaller ones.

{¶10}  During the search, the second officer found a digital scale inside the center console.  Pursuant to past experience, Bruno recognized this type of scale as regularly used to weigh illegal drugs.

{¶11}  Appellant was indicted on one count of possession of cocaine, a fifth-degree felony, and one count of illegal possession of drug paraphernalia, a fourth-degree misdemeanor.  After entering an initial plea of not guilty to both counts, appellant moved to suppress his statements that the baggie was his.  The trial court found that Bruno's statements and actions did not constitute interrogation and denied his motion to suppress.

{¶12} Appellant later plead no contest to possession of cocaine and the accompanying forfeiture specification.  The state dismissed the drug paraphernalia charge.  The trial court accepted the no contest plea, found him guilty, and imposed two years of community control, including 72 days in jail.

{¶13}  Appellant raises one assignment of error for review:

{¶14}  "The trial court erred when it denied the defendant-appellant's motion to suppress in violation of his due process rights as guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶15}  As he did before the trial court, appellant contends that his "yes, that's mine" and "that's mine" statements were the product of custodial interrogation made without the benefit of *Miranda* warnings.

{¶16}  "'[T]he Fifth Amendment privilege * * * serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.  * * * [W]ithout proper safeguards the process of in-

3

custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.' *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." *State v. Ferrell*, 11th Dist. Portage No. 2017-P-0018, 2017-Ohio-9341, 91 N.E.3d 766, ¶ 26.

{¶17} Police officers are required to administer *Miranda* warnings when a suspect is subject to custodial interrogation. *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 17, quoting *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24. There is no dispute that appellant was in custody. This leaves the question of whether he was interrogated when he twice confirmed "that's mine."

{¶18} "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." (Footnote omitted.) *Rhode Island v. Innis*, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

{¶19} The majority of courts hold that informing a suspect of the evidence obtained does not constitute interrogation. *See, e.g., State v. Turner,* 2016-Ohio-7983, 74 N.E.3d 858, ¶ 26 (2d Dist.); *Pannell v. State,* Miss.App. No. 2006-KA-01882, 7 So.3d

4

277 (2008); *Easley v. Frey,* 433 F.3d 969 (7th Cir.2006); *Acosta v. Artuz,* 575 F.3d 177, 191-192 (2nd Cir.2009), quoting David M. Nissman & Ed Hagen, Law of Confessions, Section 5:8 (2d ed.2009); *State v. Hambly,* 307 Wis.2d 98, 2008-WI-10, 745 N.W.2d 48; *Adderley v. Commonwealth,* Vir.App. No. 1318-08-1, 2010 WL 906979, *5 (Mar. 16, 2010). In *State v. Guysinger,* 4th Dist. Ross No. 11CA3251, 2012-Ohio-4169, applying the majority view, the defendant was a suspect in a residential break-in. In confronting the defendant at his mother's home and noticing that his tennis shoes were muddy, an officer arrested him and placed him in a police cruiser. The officer then went back into the mother's home and waited for a search warrant to be approved. While in the living room, the officer observed a firearm protruding from the couch and matching the description of the one used in the break-in. The officer told the defendant about the firearm and to "start thinking about the situation and how things were going." *Id.* at ¶ 5. Although Guysinger did not immediately respond, he asked to speak to the officer ten minutes later and confessed his involvement in the crime.

{¶20} In affirming the denial of Guysinger's motion to suppress, the court concluded that the police conduct of informing Guysinger of the evidence obtained was not reasonably likely to elicit an incriminatory response. *Id.* at ¶ 23.

{¶21} In *Guysinger,* the officer not only informed the defendant of the evidence obtained, but also encouraged the defendant to consider his situation. Here, Bruno only informed appellant that he found what appellant dropped into the center console. This does not constitute interrogation. *Id.* at ¶ 22, *Guysinger,* citing *United States v. Payne,* 954 F.2d 199, 203 (4th Cir.1992).

{¶22} Because appellant was not subject to interrogation, his sole assignment is without merit.

5

{¶23}   The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.