[Cite as *State v. Huber*, 2019-Ohio-270.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-033** |
| MATTHEW J. HUBER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000678.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Richard J. Perez,* 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Matthew J. Huber appeals from the judgment entry of the Lake County Court of Common Pleas denying his motion to suppress. Mr. Huber was arrested for trafficking in drugs following a warrantless search of the vehicle he was driving. He contends that none of the defined exceptions to the rule that warrantless searches are per se unreasonable applies to the circumstances in this case. We disagree and affirm the decision of the trial court.

{¶2} On the afternoon of May 31, 2017, Detectives Dennis Collins and Matthew Alford, and Sergeant Richard Slovenkay of the Mentor Police were conducting plainclothes surveillance in the area of the America's Best Value Inn, McDonald's, and BP gas station on Broadmoor Road in Mentor, Ohio. This area is a known haven for drug sales and prostitution.

{¶3} Det. Collins and Sgt. Slovenkay were located in separate, unmarked vehicles on opposite sides of the McDonald's parking lot between the inn and the BP. Just before 4:00 p.m., both officers noticed a woman, later identified as Charlcie Galasso, walking from the inn to the BP. Det. Collins testified she was wearing a hoodie and looked very disheveled, as if she had just awoken.

{¶4} Sgt. Slovenkay decided to follow Ms. Galasso and drove to the BP from the McDonald's to join Det. Alvord, who was already there. He briefly lost sight of Ms. Galasso but then then spotted her exiting from the passenger side of a blue, four-door Mazda stationed at the pumps. Sgt. Slovenkay was facing the driver's side of the Mazda, in a Ford F-150 with a lift kit. Then he saw a man, later identified as Mr. Huber, exit from the driver's side of the Mazda, and go around to the rear. He testified Ms. Galasso and Mr. Huber reached out and quickly exchanged something, though he could not see what it was. Ms. Galasso immediately headed back toward the inn. He radioed Det. Collins that he believed he had observed a drug transaction and instructed him to stop and question Ms. Galasso.

{¶5} Det. Collins stopped Ms. Galasso when she reached the McDonald's parking lot. He testified that upon seeing he was police, she whimpered in fear, and said, "I've been so good. I'm on probation." Eventually, she admitted to having a

2

baggie of crack cocaine in her right sleeve.  Det. Collins relayed this information to the other two officers, and she was arrested and transported to the police station.  At the time of her encounter with Det. Collins, she did not state she had purchased the drugs from Mr. Huber.

{¶6}   At the BP, another woman exited the store, and got into the passenger's side of the Mazda.  Det. Alvord and Sgt. Slovenkay blocked the Mazda.  Sgt. Slovenkay questioned the woman, later determined to be Lorraine Lancaster.  She said the Mazda was hers.  When asked whether Mr. Huber had any guns or drugs in the Mazda, she denied any knowledge he did.  She had an open container of Mike's Hard Lemonade, an alcoholic beverage, so she was arrested.

{¶7}   Det. Alvord questioned Mr. Huber.  The detective testified that Mr. Huber was nervous and sweating, but cooperative.  Due to the alleged drug transaction between himself and Ms. Galasso, he was arrested and given his Miranda rights, which he exercised.  However, Det. Alvord testified that Mr. Huber, at some point after his Miranda rights were read, made several unsolicited statements, including an inquiry as to whether Ms. Lancaster would be charged and a statement that, in Det. Alvord's words, "he wanted everything to be on him."  The officer searched the Mazda, finding four $20 bills in the map pocket of the driver's side, drug residue, an Exacto knife, marijuana, and a bag filled with smaller, green-tinted baggies of crack cocaine like the baggie found on Ms. Galasso.

{¶8}   Mr. Huber pleaded not guilty and filed his motion to suppress November 2, 2017.  The state responded on November 17, 2017.  On November 22, 2017, the suppression hearing went forward.  That same day, the trial court filed its judgment

3

entry denying the motion. At the suppression hearing, Keith King, a private investigator, testified on Mr. Huber's behalf. He, defense counsel, and one of defense counsel's secretaries re-enacted the circumstances of Mr. Huber's arrest, with vehicles placed at Mr. King's best guess of where Sgt. Slovenkay observed Mr. Huber and Ms. Galasso make contact. Mr. King took 26 photos of the re-enactment, which were entered into evidence. Mr. King asserted that when sitting in his SUV he was at a slightly more advantageous angle than that occupied by Sgt. Slovenkay and that he could not see defense counsel's hands or arms, or whether he moved them. On cross examination, Mr. King admitted there was a way to determine exactly the angle at which Sgt. Slovenkay made his observations but was not provided with enough detail to exactly recreate the scene. Moreover, he did not know or take into consideration the height differential of his reenactment SUV and Sgt. Slovenkay's F-150 with lift kit.

{¶9} On September 8, 2017, the Lake County Grand Jury filed an indictment in five counts against Mr. Huber: count 1, trafficking in cocaine, a second degree felony in violation of R.C. 2925.03(A)(1), with a forfeiture specification; count 2, trafficking in cocaine, a third degree felony in violation of R.C. 2925.03(A)(2), with a forfeiture specification; count 3, possession of cocaine, a second degree felony in violation of R.C. 2925.11, with a forfeiture specification; count 4, possessing criminal tools, a fifth degree felony in violation of R.C. 2923.24, with a forfeiture specification; and, count 5 possession of marihuana, a minor misdemeanor in violation of R.C. 2925.11, with a forfeiture specification.

{¶10} Mr. Huber then pleaded no contest to count 2 of the indictment, with its attendant forfeiture specification. On February 9, 2018, the trial court filed its judgment

4

entry of sentence. Mr. Huber was sentenced to three years community control sanctions, and forfeiture of $870 found on his person at the time of arrest. He now appeals, assigning a single error for our review:

{¶11} "The trial court erred to the prejudice of appellant by denying his motion to suppress evidence."

{¶12} Under this assignment of error, he presents four issues for review:

{¶13} 1. "The search of the vehicle operated by appellant was unconstitutional as it was not supported by probable cause."

{¶14} 2. "The State of Ohio cannot establish the warrantless search and seizure of the vehicle operated by appellant as a valid administrative inventory search exception to the warrant requirement of the Fourth Amendment to the United States Constitution."

{¶15} 3. "The State of Ohio cannot establish that the warrantless search and seizure of the vehicle appellant operated was a valid search by consent exception to the warrant requirement of the Fourth Amendment to the United States Constitution."

{¶16} 4. "The State of Ohio cannot establish that the warrantless search and seizure was a valid search under the plain-view exception to the warrant requirement of the Fourth Amendment to the United States Constitution."

{¶17} The second through fourth issues argue the administrative inventory search exception, the consent exception, and the plain view exception to the warrant requirement do not apply to this case. The state and this court agree. First, the administrative inventory search applies to legally impounded vehicles. At the time of the search, the vehicle in question was not impounded and the state does not argue otherwise. Additionally, the record does not reflect, nor does the state assert, that

5

officers sought the consent of either the owner, Ms. Lancaster, or the driver, Mr. Huber, before searching the vehicle. Similarly, the record does not reflect any seized evidence of drug trafficking was in plain view. The only plainly-viewed item of suspicion was the open can of alcohol. However, the state does not argue that the alcohol is what authorized their search. Accordingly, Mr. Huber's second through fourth issues are without merit. We turn then to the merits of Mr. Huber's first issue, arguing the arresting officers did not have probable cause to make a warrantless search and seizure of the Mazda.

{¶18} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

{¶19} The Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, prohibit "unreasonable searches and seizures." *Id.* "Warrantless searches are per se unreasonable, * * * subject to only a few specific exceptions." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶15.

{¶20} "The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." *State v. Mills*, 62 Ohio St.3d 357, 367

6

(1992). "As it relates specifically to an automobile search, probable cause is 'a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Durham*, 12th Dist. Warren, No. 2013–03–023, 2013-Ohio-4764, ¶32, quoting *State v. Kessler*, 53 Ohio St.2d 204, 208 (1978). "The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted a search." *Durham, supra,* at ¶32, citing *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, ¶14. Probable cause is evaluated under the totality of the circumstances. *Id.* at paragraph one of the syllabus.

**{¶21}** Mr. Huber points out that Sgt. Slovenkay admitted he did not see what was allegedly exchanged between himself and Ms. Galasso, nor did he observe an exchange of money. He further points to the testimony of Mr. King, that, during the re-enactment of the events, he could not see the arms or hands of the participants. The state replies that all of the participating officers have vast experience investigating drug deals, and that these facts took place at a known drug haven. The state discounts Mr. King's testimony, since he was sitting in an SUV, while Sgt. Slovenkay was sitting in a Ford F-150 with a lift kit. The state contends the height angles account for the fact King could not see if the actors in the re-enactment moved their arms or hands.

**{¶22}** We are required to accept the factual findings of the trial court if they are supported by competent, credible evidence. *Leak, supra,* at ¶12. Here, the trial court, not convinced by Mr. Huber's witness's recreation, found that Sgt. Slovenkay had observed what he believed to be a drug transaction. Mr. King's testimony and pictures purport to show that Sgt. Slovenkay could not have seen Mr. Huber and Ms. Galasso

7

make an exchange. However, the state discounts this evidence because Mr. King's testimony is based on the estimated vehicle locations and does not take height differentials into consideration. We find the record shows the court had competent, credible evidence sufficient to disbelieve the expert. As such, we accept the factual findings of the trial court.

{¶23} Further, we find no error on the part of the trial court in determining the officers had probable cause to search the vehicle. The officers had substantial knowledge, training, and experience in witnessing drug transactions. They observed unusual behavior in a known drug haven: namely, a disheveled woman walked from a hotel to a gas station, immediately got in an unoccupied car parked at a gas pump, then got out when the driver returned and was seen making a quick exchange with him before quickly walking back toward the hotel. When stopped moments later, she had drugs in her sleeve. Thus, based on their knowledge, training, and experience, it was reasonable for the officers to conclude the driver was involved in a drug transaction, which provided, at the very least, reasonable suspicion to investigate Mr. Huber and the Mazda. As the officers approached, Mr. Huber was visibly nervous. He did not make appropriate eye contact, was sweating, and was fidgeting with his cell phone instead of giving the officers appropriate answers to their questions.

{¶24} Based on these facts, we hold the trial court did not err in determining the officers had probable cause to search the vehicle and the evidence obtained therein was properly admitted into evidence. As such, Mr. Huber's assignment of error has no merit.

8

{¶25} The judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶26} As I find the trial court erred in failing to grant the motion to suppress, I would reverse and remand. I believe this warrantless search was not justified under the automobile exception.

{¶27} As the majority admits, Mr. Huber points out that Sgt. Slovenkay admitted he did not see what was allegedly exchanged between himself and Ms. Galasso, nor did he observe an exchange of money. He further points to the testimony of Mr. King, that, during the re-enactment of the events, he could not see the arms or hands of the participants.

{¶28} We are required to accept the factual findings of the trial court if they are supported by competent credible evidence. However, Mr. King's testimony and pictures clearly show that Sg. Slovenkay could not have seen Mr. Huber and Ms. Galasso make an exchange. Mr. King is a vastly experienced private detective, highly respected throughout the legal and police communities.

{¶29} There was no probable cause for the warrantless search in this case. The assignment of error has merit.

{¶30} I respectfully dissent.

9