[Cite as *State v. Rath*, 2023-Ohio-2118.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

MICHAEL D. RATH,

      Defendant-Appellant.

CASE NO. 2023-L-004

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 000712

**O P I N I O N**

Decided: June 26, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, LLC, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Michael Rath, appeals his conviction and sentence for Aggravated Trafficking in Drugs. For the following reasons, Rath's conviction and sentence are affirmed.

{¶2} On August 15, 2022, the Lake County Grand Jury returned an eight-count Indictment against Rath for Aggravated Trafficking in Drugs, Aggravated Possession of Drugs (two counts), Trafficking in Cocaine, Possession of Cocaine, Trafficking in Heroin, Possession of Heroin, and Possessing Criminal Tools.

{¶3}    On September 20, 2022, Rath filed a Motion to Suppress.

{¶4}    On November 3, 2022, a hearing was held on the Motion to Suppress.

{¶5}    On November 4, 2022, the trial court issued its written decision denying the

Motion to Suppress:

> Detective Ryan Butler ("Det. Butler") and Detective Matthew Jacob ("Det. Jacob"), both of the Mentor Police Department, testified at the hearing. Det. Jacob testified that on June 28, 2022 he received a tip that Defendant was staying at the Woodspring Suites Hotel ("Hotel") in Mentor with a female who appeared to be intoxicated. Det. Butler testified that he followed Defendant and his companion, later identified as Kel[c]ey Music ("Music"), as Defendant made several short-duration stops, including at the home of Devon Brooks ("Brooks"), who has a criminal history for drug trafficking. Defendant also engaged in evasive driving tactics. Det. Jacob pulled over Defendant for a marked lanes violation and questioned him outside of his vehicle. Defendant tried to buy time before answering each question and appeared nervous; he was sweating and breathing heavily. Defendant consented to a pat down, but when Det. Jacob asked to search him Defendant said he did not think it was necessary for a routine traffic stop. Det. Jacob explained that it was more than a routine stop, and that if Defendant had nothing to hide then the sooner he searched Defendant the sooner Defendant could leave; Defendant responded "go ahead and search me man." The entire exchange lasted approximately one minute, and was well within the average of 10 to 15 minutes that Det. Jacob testified would be needed for a marked lanes violation stop. No threats or promises were made to Defendant, and while Defendant questioned the need for a search he never said "don't search me." Defendant had four white prescription pills in his wallet not in their original packaging, and a large wad of cash in both his wallet and his shorts pocket. As a result Det. Jacob detained him by handcuffing him and putting him in the back of his patrol car.
>
> While Det. Jacob was speaking to Defendant, Det. Butler questioned Music, who admitted that she had methamphetamine in her purse and was arrested. Mentor Police then searched Defendant's vehicle, including a backpack that had been within Music's reach while she was in the passenger seat, and found narcotics inside the backpack. Later that day Det. Butler obtained a search warrant for Defendant's hotel room, where he found additional narcotics.

2

* * *

The court finds that Defendant consented to the search of his person. The exchange with Det. Jacob took approximately one minute, did not include any threats or promises, did not extend the stop, and took place during daylight hours in a public area with people walking past. There were no indications (and Defendant does not argue) that Defendant did not understand Det. Jacob's request. Defendant questioned the need to be searched, but never stated "don't search me." And although there were multiple officers present, those officers did not threaten Defendant or have their guns drawn. Accordingly, based on the totality of the circumstances, Defendant's consent was freely and voluntarily given. * * *

Defendant's only challenge to the narcotics found in his vehicle and his hotel room is that they are fruit of the poisonous tree because he did not voluntarily consent to the search of his person. * * * Even if Defendant had challenged the search of his vehicle, or opening the backpack during the search, the motion would be denied. Based on the totality of the circumstances – including that Defendant was staying at a Hotel that was known for drug trafficking, he made several short-duration stops, he made evasive driving measures, and he stopped at a known drug trafficker's house for 5-10 minutes; and Music admitted to having methamphetamine in her purse and had access to the backpack in the vehicle – the court finds that the officers had probable cause to search the vehicle and the backpack.

{¶6} On November 8, 2022, Rath entered a plea of "No Contest" to the count of Aggravated Trafficking in Drugs and "Guilty" to accompanying Contraband/Instrumentalities Forfeiture and Currency Forfeiture Specifications. The remaining counts of the Indictment were dismissed at sentencing.

{¶7} On December 20, 2022, the trial court issued a Judgment Entry of Sentence, ordering Rath to serve a prison term of a minimum of five years to a maximum of seven and one-half years for Aggravated Trafficking.

{¶8} On January 10, 2023, Rath filed his Notice of Appeal. On appeal, he raises the following assignments of error:

3

Case No. 2023-L-004

[1.] Mr. Rath received ineffective assistance of counsel because trial counsel failed to challenge probable cause for the search of his vehicle.

[2.] The trial court erred in overruling Appellant's Motion to Suppress.

[3.] The trial court plainly erred in imposing an unconstitutional sentence under the Reagan Tokes Act.

{¶9} The assignments of error will be considered out of order. Under the second assignment of error, Rath argues that the trial court erred by finding that his consent to the search of his person was voluntary.

{¶10} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶11} The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Article I, Section 14 of the Ohio Constitution affords the same protection as the Fourth Amendment in felony cases." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12. "The Fourth Amendment proscribes all unreasonable searches and seizures." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 17. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct.

4

507, 19 L.Ed.2d 576 (1967). "Consequently, evidence obtained in a warrantless search is generally inadmissible, and under the 'fruit of the poisonous tree' doctrine, such evidence cannot serve as probable cause to support a subsequent warrant." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988).

{¶12} "A search based on consent is one exception to the Fourth Amendment's general warrant requirement." *State v. Ferrell*, 2017-Ohio-9341, 91 N.E.3d 766, ¶ 12 (11th Dist.); *State v. Penn*, 61 Ohio St.3d 720, 723-724, 576 N.E.2d 790 (1991). "In order to waive his Fourth Amendment privilege against unreasonable searches and seizures, the accused must give a consent which is voluntary under the totality of all the surrounding circumstances." *State v. Childress*, 4 Ohio St.3d 217, 448 N.E.2d 155 (1983), paragraph one of the syllabus. "[W]hen the subject of a search is not in custody," the State must "demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *State v. Robinette*, 80 Ohio St.3d 234, 242-243, 685 N.E.2d 762 (1997), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority").

{¶13} Rath argues that the facts of the present case demonstrate that his consent was not voluntary: "When Mr. Rath agreed to the search of his person, he was surrounded by numerous officers. He had been informed that he was not just stopped for a traffic violation, but was actually the subject of a narcotics investigation. His initial refusal to consent to a search did not stop detectives from repeatedly asking for permission to

5

search. Officers also indicated to him that he would need to agree to a search in order to end the interaction with law enforcement." Brief of Appellant at 5. We disagree.

{¶14} As noted above, consent to search is valid if it is voluntarily given under the totality of the circumstances. Although seven officers were present at the scene, only a couple were actively engaged with Rath. Although reluctant to consent to the search, the interaction between Rath and the police was cooperative rather than confrontational, occurred in a public space, and was of brief duration. The fact that Rath was under investigatory detention when he gave his consent does not ipso facto render the consent involuntary. "The fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 42 (8th Dist.), quoting *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *State v. Fouch*, 5th Dist. Licking No. 14 CA 71, 2015-Ohio-1784, ¶ 28 (the fact that defendant was in custody "did not affect the voluntariness of [her] consent to search"); *compare Robinette* at 241 ("[v]oluntary consent * * * may validate an otherwise illegal detention"). Here, Detective Jacob presented Rath with an accurate description of the situation so as to render his consent informed rather than coerced. Rath was the subject of a narcotics investigation and had been observed engaging in activity that caused the police to have reasonable (and justified) suspicions that he was trafficking. Detective Jacob's statements that these suspicions would have to be eased before Rath could leave simply reflected the actual circumstances of the situation. "[I]f the officer's statement simply advises the suspect of his [or her] precise legal situation, such a 'threat' is not coercion." (Citation omitted.) *State v. Williams*, 2d Dist. Montgomery No. 28550, 2020-Ohio-3903, ¶ 50, ¶ 51 ("Det. Hemingway simply advised Williams of

6

what the police had observed [a suspected drug transaction] and the choices that were involved [if consent were not given a warrant would be obtained]").

{¶15} Assuming, arguendo, that the consent search was invalid, the error was harmless. As discussed below, the search of Rath's vehicle was supported by probable cause independent of the pills or anything else discovered on his person. Anything incriminating on or about Rath's person would have been inevitably discovered following the search of his vehicle. *State v. Camp*, 2014-Ohio-329, 24 N.E.3d 601, ¶ 35 (5th Dist.) ("because the officers would have arrested Camp for the drug paraphernalia [found in his vehicle] and would have conducted a full search incident to arrest, the officers inevitably would have discovered the loaded heroin syringe in Camp's pocket").

{¶16} The second assignment of error is without merit.

{¶17} Under the first assignment of error, Rath argues that trial counsel was ineffective for not challenging the search of his vehicle.

{¶18} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000). With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a

7

defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶19} In addition to voluntary consent, an exception to the warrant requirement exists for searches of automobiles based on probable cause. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000); *State v. Welch*, 18 Ohio St.3d 88, 91, 480 N.E.2d 384 (1985), citing *Carroll v. United States*, 267 U.S. 132, 155-156, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ("a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment"). In the context of an automobile search, probable cause has been defined as "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." *State v. Kessler*, 53 Ohio St.2d 204, 208, 373 N.E.2d 1252 (1978), quoting *Carroll* at 149. "The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted a search." (Citation omitted.) *State v. Huber*, 11th Dist. Lake No. 2018-L-033, 2019-Ohio-270, ¶ 20. "[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262, ¶ 13, quoting *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

8

Case No. 2023-L-004

{¶20} Rath argues that trial counsel was ineffective for not challenging "whether the [police] officers had probable cause to conduct the search of the vehicle." He maintains that the probable cause determination to search the vehicle was based on the discovery of unidentified pills in substitute packaging (a baggie) on his person during the consent search, and that this determination rested on the mistaken belief that it is illegal to carry prescription pills in an unmarked container. Brief of Appellant at 3-4. We disagree.

{¶21} As noted by the State, the trial court expressly stated that, even if the search of the vehicle had been challenged, probable cause existed to search based on the facts that "Defendant was staying at a Hotel that was known for drug trafficking, he made several short-duration stops, he made evasive driving measures, and he stopped at a known drug trafficker's house for 5-10 minutes; and Music admitted to having methamphetamine in her purse and had access to the backpack in the vehicle." A review of the record of the suppression hearing confirms that the pills were not part of the probable cause determination to search the vehicle. Detective Butler, who conducted the search of the vehicle, testified at the hearing that there were a "multitude of reasons" for searching the vehicle: "Obviously based on everything that we witnessed today [sic] I got my direct knowledge about the defendant, his history, his prior arrests, watching him leave a high crime high drug area, Woodspring Suites, with Kelcey Music; them stopping at multiple residences for short periods of time; him also committing multiple countersurveillance tactics. And then ultimately the arrest of Kelcey Music, her admission to her being in possession of methamphetamine as well as other paraphernalia." *Compare Huber* at ¶ 23 ("based on their knowledge, training, and experience [witnessing

9

drug transactions], it was reasonable for the officers to conclude the driver was involved in a drug transaction").

{¶22} Given that the search of the vehicle was not based on the discovery of the baggie with pills or of any other contraband during the consent search, trial counsel was not ineffective for failing to challenge the search of the vehicle on those grounds.

{¶23} The first assignment of error is without merit.

{¶24} Under the third assignment of error, Rath argues his indefinite sentence imposed pursuant to R.C. 2967.271 is unconstitutional as violative of his rights to trial by jury and due process as well as the separation of powers doctrine. This court has previously rejected these arguments and the law with respect to the constitutionality of the Reagan Tokes Act remains settled in this district. *See State v. Reffitt*, 11th Dist. Lake No. 2021-L-129, 2022-Ohio-3371.

{¶25} While appreciating the need to preserve the issues raised for further appellate review, the third assignment of error is without merit.

{¶26} For the foregoing reasons, Rath's conviction and sentence for Aggravated Trafficking in Drugs is affirmed. Costs to be taxed against the appellant.


MARY JANE TRAPP, J.,

EUGENE A. LUCCI, J.,

concur.

10

Case No. 2023-L-004