[Cite as *State v. Chuppa*, 2025-Ohio-3117.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-L-009 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| LINDA A. CHUPPA, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 000830 |

## OPINION AND JUDGMENT ENTRY

Decided: September 2, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff- Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant-appellant, Linda A. Chuppa ("Chuppa"), appeals from the judgment of the Lake County Court of Common Pleas sentencing Chuppa to a mandatory indefinite prison term of two to three years as a result of her no contest plea to, and subsequent conviction of, aggravated possession of drugs, a felony of the second degree, in violation of R.C. 2925.11 with an accompanying forfeiture specification. Chuppa appeals from the trial court's denial of her motion to suppress evidence seized after an investigatory stop and warrantless search of her vehicle.

{¶2} Upon review, we conclude that the trial court did not err when it determined that law enforcement officers had reasonable articulable suspicion to conduct an investigatory stop of Chuppa's vehicle. We also conclude that law enforcement officers had probable cause under the circumstances to search Chuppa's vehicle under the automobile exception to the search warrant requirement. Officers were participating in an ongoing drug investigation. During their investigation, officers conducted a controlled buy of narcotics from a target of their investigation, a third party identified as Briana McName ("McName"). The controlled buy occurred in a Target parking lot. After the transaction, McName, who resided in another county, drove to a Dollar General parking lot. Shortly after the controlled buy, officers observed Chuppa approach and enter McName's vehicle. Given the close proximity of the time, approximately 30 minutes, between the controlled buy and McName's meeting with Chuppa, the similarities between the separate encounters, and the training and experience of the law enforcement officers involved, we conclude that officers had reasonable suspicion to conduct an investigatory stop of the vehicle and had probable cause to believe illegal drugs were inside Chuppa's vehicle.

{¶3} We also conclude that the trial court properly denied Chuppa's motion to suppress her statements made to law enforcement after her arrest. Chuppa did not identify any incriminating statements that were made to law enforcement. Moreover, as we have concluded the investigatory stop and search of the vehicle were lawful, Chuppa's statements cannot be deemed "fruit of the poisonous tree."

{¶4} Therefore, the trial court's factual findings are supported by the record and the trial court properly applied the law. The trial court properly denied Chuppa's motion to suppress.

{¶5} Thus, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶6} On July 9, 2024, the Lake County Grand Jury, by secret indictment, charged Chuppa with one count of aggravated possession of drugs, to wit: 112.95 grams of methamphetamine, a felony of the second degree, in violation of R.C. 2925.11(A), with an accompanying forfeiture specification pursuant to R.C. 2941.1417 and R.C. 2981.04. Appellant was arraigned on July 15, 2024, and bond was set at $50,000 cash, surety, or 10 percent.

{¶7} On September 13, 2024, the State filed a motion for a bond review hearing after discovering Chuppa had left Ohio without the trial court's permission, in violation of the conditions of her bond. A hearing was held on the State's motion on September 18, 2024. The trial court granted the motion and revoked Chuppa's bond.[1]

{¶8} On October 1, 2024, Chuppa filed her motion to suppress after receiving leave to file from the trial court. Chuppa argued in her motion that officers lacked reasonable suspicion to stop her vehicle, that officers lacked probable cause to search her vehicle, and that her statements made after her arrest should be suppressed.

{¶9} A suppression hearing was held on October 24, 2024. On October 28, 2024, the trial court denied Chuppa's motion to suppress.

{¶10} On November 18, 2024, Chuppa appeared with counsel, waived her constitutional rights, and entered a plea of no contest to Count 1, aggravated possession of drugs, a felony of the second degree, in violation of R.C. 2925.11, with a forfeiture

---

1. Chuppa later filed a motion to reconsider bond on September 27, 2024. The trial court granted Chuppa's motion, over the State's objection, and reinstated the $50,000 bond on October 18, 2024.

Case No. 2025-L-009

specification pursuant to R.C. 2941.1417 and R.C. 2981.04. The State presented the following factual basis for the charges:

> The evidence would show on August 2nd of 2023 in Lake County, Ohio the Lake County Narcotics Agency was conducting an investigation. As a result of that[,] a traffic stop was performed where the defendant Linda Chuppa was the driver and sole occupant of the vehicle. The search of the vehicle found that in an oven mitt that she had purchased prior to obtaining the drugs, there was a large bag of methamphetamine. It was sent to the Lake County crime lab, confirmed to be methamphetamine in the amount of 112.95 grams. The defendant had obtained and possessed that methamphetamine that day which was more than 5 times bulk less than 50 times bulk.
>
> In a subsequent interview with Narcotics agents the defendant admitted that she paid $800.00 for those drugs and provided the text messages which showed her coordinating the purchase of those drugs that day.

{¶11} The trial court accepted Chuppa's plea and found her guilty. A presentence investigation ("PSI") was ordered. The following day, on November 19, 2024, Chuppa's bond was revoked due to a positive drug screening.

{¶12} On December 19, 2024, the trial court sentenced Chuppa to a mandatory prison term of a minimum of two (2) years up to a maximum of three (3) years on Count 1. The trial court also ordered the drugs forfeited pursuant to R.C. 2981.12, R.C. 2981.13, and R.C. 3719.11(A). The mandatory fines were waived.[2] Finally, the trial court denied counsel's oral motion to stay Chuppa's sentence pending appeal.

**The Appeal**

{¶13} Chuppa timely appeals and raises a single assignment of error for review:

> [1.] The trial court erred when after a hearing it denied appellant Chuppa's motion to suppress evidence obtained

---

2. An amended sentencing entry was filed December 23, 2024. The amended entry correctly noted that Chuppa entered a plea of no contest.

after an illegal stop, search, and seizure conducted where law enforcement never witnessed appellant engage in any illegal conduct and the stop was made absent reasonable suspicion and the search absent probable cause. (T.r. Vol. III, 9-39); (Docs. 79, 88, 100).

{¶14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* citing *State v. Mills*, 62 Ohio St. 3d 357. We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.* "Once an appellate court determines whether the trial court's factual findings are supported by the record, the court must then engage in a de novo review of the trial court's application of the law to those facts*." State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.), citing *State v. Lett*, 2009-Ohio-2796, ¶ 13 (11th Dist.), citing *State v. Djisheff*, 2006-Ohio-6201, ¶ 19 (11th Dist.).

{¶15} At the suppression hearing, the State presented one witness, Lieutenant Brad Kemp ("Lt. Kemp"), and two exhibits, the video of Chuppa's interview with police ("State's Exhibit 1") and the signed *Miranda* warnings form, ("State's Exhibit 2"). The following testimony was presented at the suppression hearing:

{¶16} On August 2, 2023, Lt. Kemp of the Lake County Narcotics Agency ("LCNA") was assisting Special Agent 95 in a surveillance detail relating to an ongoing investigation of Briana McName ("McName") for drug trafficking.

{¶17} During the surveillance detail, Lt. Kemp observed a confidential informant make a controlled buy of narcotics from McName. The transaction occurred in the Target

Case No. 2025-L-009

parking lot located in the City of Willoughby. McName did not exit the vehicle. The confidential informant entered the passenger side of McName's vehicle and purchased three "eight balls," or approximately 3.5 grams of crack cocaine, methamphetamine, and heroin for $400. The exchange lasted approximately four minutes. After purchasing the narcotics, the confidential informant returned to his vehicle and relinquished the drugs to Special Agent 95.

{¶18} After the controlled buy, the surveillance detail followed McName to see if she would meet anyone else. Without losing sight of McName, officers observed her vehicle pull into the parking lot of the Dollar General in Shoregate Plaza located in Willowick. McName did not exit her vehicle. According to Lt. Kemp, this led officers to believe McName could be meeting someone else.

{¶19} Approximately fifteen minutes after parking in the Dollar General lot, Lt. Kemp observed a white female, later identified as Chuppa, exit the Dollar General store with a yellow bag and approach McName's vehicle. Chuppa entered the passenger side of the vehicle. McName and Chuppa were in the vehicle for approximately fifteen minutes, before Chuppa exited the car with the yellow bag and returned to her vehicle.

{¶20} Lt. Kemp testified that the Willowick Police Department was contacted to assist in a traffic stop of a potential drug deal. While Lt. Kemp could not observe McName's or Chuppa's movements inside the vehicle, Lt. Kemp testified that he believed, given the circumstances, that a drug deal took place, including the similarities between the controlled buy and the encounter between Chuppa and McName.

{¶21} Officer Brian O'Toole of the Willowick Police Department initiated an investigatory stop of Chuppa's vehicle. Chuppa was the sole occupant. Lt. Kemp and

Case No. 2025-L-009

Director Pat Hengst were on scene at the time of the stop and conducted a search of the vehicle due to the officers' belief that a drug transaction took place between McName and Chuppa. Inside the yellow Dollar General bag was an oven mitt along with a box containing approximately four ounces of methamphetamine. According to Lt. Kemp, Chuppa denied that the drugs were hers.

{¶22} Chuppa was arrested and taken to the Willowick Police Department and interviewed by Lt. Kemp and Special Agent 95. Lt. Kemp asked for some basic background information such as, Chuppa's address, birth date, social security number, cell phone number, physical characteristics, employment, education, and the names of Chuppa's family members. Chuppa was also asked about past drug use and prior convictions. Chuppa admitted she previously used "weed," cocaine, and methamphetamine. Chuppa was then read her Miranda rights. Chuppa indicated that she understood her rights, signed the LCNA Miranda Warning form, and subsequently admitted that she purchased the drugs from McName for $800.

{¶23} The trial court concluded, based on the totality of the circumstances, that "Lt. Kemp had reasonable suspicion that a drug transaction had taken place between McName and [Chuppa] and that the investigative stop . . . was constitutional." The trial court further concluded that Lt. Kemp had probable cause to believe that Chuppa's vehicle contained drugs purchased from McName in the Dollar General parking lot, and that the search of Chuppa's vehicle was permissible under the automobile exception of the search warrant requirement. Finally, as to the statements Chuppa made to Lt. Kemp after her arrest, the trial court determined that Chuppa failed to identify any incriminating

statements made prior to receiving her *Miranda* warning and that the statements were not the "fruit of the poisonous tree."

{¶24} In her sole assignment of error, Chuppa argues that the trial court erred when it denied her motion to suppress and determined that: 1) officers had reasonable suspicion to conduct an investigatory stop of her vehicle, 2) officers had probable cause to search her vehicle pursuant to the automobile exception to the search warrant requirement, and 3) her statements were not "fruit of the poisonous tree." We address each claim below.

## Investigatory Stop

{¶25} Chuppa first argues that the trial court erred when it concluded that officers had reasonable articulable suspicion to stop her vehicle where officers did not personally witness Chuppa "engaging in any activity which would give rise to a belief she was engaged in a drug transaction." We disagree.

{¶26} The Fourth Amendment to the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution, prohibit unreasonable searches and seizures. A police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *see Navarette v. California*, 572 U.S. 393, 396 (2014); *see also State v. Tidwell*, 2021-Ohio-2072, ¶ 19.

{¶27} "An investigatory traffic stop . . . is a brief, minimally intrusive response that enables a law-enforcement officer with at least reasonable suspicion that a crime is being

Case No. 2025-L-009

or is about to be committed to obtain more information that can quickly confirm or dispel the officer's suspicion." *Tidwell* at ¶ 48.

{¶28} As the Supreme Court of Ohio has recognized, "[p]recisely defining 'reasonable suspicion' is not possible, and as such, the reasonable-suspicion standard is "'not readily, or even usefully, reduced to a neat set of legal rules.'"" *State v. Hawkins*, 2019-Ohio-4210, ¶ 20, quoting *Ornelas v. United States*, 517 U.S. 690, 695-696 (1996), quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983).

> The reasonableness of a *Terry* stop "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The level of suspicion required to meet the reasonable-suspicion standard "is obviously less demanding than that for probable cause" and "is considerably less than proof of wrongdoing by a preponderance of the evidence" but is "something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry* at 27.

*Hawkins* at ¶ 20. Accordingly, reasonable suspicion is inherently fact sensitive and dependent.

{¶29} When determining whether an officer had reasonable suspicion to conduct a *Terry* stop, "the 'totality of circumstances' must be considered and 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id*. at ¶ 21, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "Reasonable suspicion for a *Terry* stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Tidwell*, 2021-Ohio-2072, at ¶ 20, quoting *Alabama v. White*, 496 U.S. 325, 330 (1990). "'Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," * * *, that

Case No. 2025-L-009

must be taken into account when evaluating whether there is reasonable suspicion.' [*White*], quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981). Police officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."' *United States v. Arvizu*, 534 U.S. 266, 273 (2002), *quoting Cortez* at 418." *Tidwell* at ¶ 20. Therefore, a court must look at the whole picture through the eyes of reasonable and prudent police officer when determining whether reasonable suspicion exists to support a stop.

{¶30} "'A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct.' [*Arvizu*] at 277. In permitting detentions based on reasonable suspicion, '*Terry* accepts the risk that officers may stop innocent people.' *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)." *Hawkins*, 2019-Ohio-4210, at ¶ 22. In other words, law enforcement officers do not need proof of an unlawful action to conduct a stop.

{¶31} Chuppa cites *State v. Kaine*, 2008-Ohio-5486 (8th Dist.), in support of her position that law enforcement officers lacked reasonable articulable suspicion to conduct an investigatory stop. In *Kaine*, officers were conducting drug surveillance in a Walgreen's parking lot located in an area of high drug activity. *Id.* at ¶ 3. A Ford Explorer entered the parking lot and parked in a space away from the store. The driver did not exit the vehicle and officers became suspicious. A second vehicle entered the parking lot. A male exited the second vehicle and entered the Ford Explorer. After approximately thirty seconds, the male exited the Ford Explorer and returned to the second vehicle. The detective was not able to observe the activity within the Ford Explorer. *Id.* The Ford Explorer exited the

parking lot and law enforcement officers conducted an investigatory stop of the vehicle. Upon searching the vehicle, cocaine was discovered under the front seat of Kaine's vehicle. *Id.* at ¶ 6

{¶32} The Eighth District Court of Appeals concluded:

> [U]nder the circumstances, the detectives did not have the requisite reasonable suspicion to stop the Ford Explorer. There is no question the officers recognized some behavior that was suspicious, but there was a lack of specific articulable factors that would justify a stop for drug-related activity. The detectives observed only the Ford Explorer parked in a high-drug area and the passenger of the second vehicle briefly enter and then exit the Ford Explorer. No specific articulable drug-related activity was observed
>
> . . .
>
> Here, the detectives did not observe any activity within the Ford Explorer, and they did not observe any evidence of drugs. They had no more than an inchoate hunch or suspicion that a drug transaction had occurred. This court has previously found a lack of reasonable suspicion in similar cases where the officers fail to observe any drugs or exchanges between motorists. See *State v. Stewart*, Cuyahoga App. No. 88239, 2007–Ohio–1597; *State v. Delagraza (*2001), 144 Ohio App.3d 474, 760 N.E.2d 860; see, also, *State v. Wagner–Nitzsche*, Summit App. No. 23944, 2008–Ohio–3953. Considering the totality of the circumstances, we find the trial court erred in determining the detectives had reasonable suspicion to stop Kaine.

*Kaine* at ¶ 12-14.

{¶33} Chuppa also cites to *State v. Jones*, 70 Ohio App.3d 554 (2d Dist. 1990) wherein the Second District Court of Appeals emphasized that "[a] person's mere presence in an area of high crime activity does not suspend the protections of the Fourth Amendment." *Id*. at 559. In *Jones*, officers did not point to any furtive behavior on the part

of Jones or her passenger and possessed nothing more than an unarticulated hunch that drug activity was occurring.

{¶34} The instant case is factually distinguishable from *Kaine* and *Jones*. Here, officers conducted a controlled buy from McName, the subject of an ongoing drug investigation, in the parking lot of Target. After McName completed her sale, she proceeded to another location, the parking lot of Dollar General. Officers were familiar with McName and knew she resided outside of Lake County. Given the close proximity in time from the controlled buy, officers believed she may conduct another sale. Chuppa was observed exiting the Dollar General store with a yellow shopping bag. She approached McName's vehicle in the Dollar General parking lot and got inside. After approximately fifteen minutes, Chuppa exited McName's vehicle and returned to her own vehicle. While officers did not observe any activity within McName's vehicle during the second sale, given the similarities between the controlled buy a short time earlier and the encounter between McName and Chuppa, officers had specific articulable facts regarding possible drug activity sufficient to conduct an investigatory stop of Chuppa's vehicle.

{¶35} Subsequent to *Jones,* the Second District Court of Appeals concluded that officers had reasonable articulable suspicion to conduct an investigatory stop. *State v. Hagler*, 1999 WL 76786, *4 (2d Dist. Feb. 19, 1999).

> In contrast to *Jones*, the stop in this case occurred as a result of police surveillance in an area specifically targeted by citizen complaints of open-air drug sales. After conducting surveillance, the officers found activity consistent, in their experience, with drug sales. In particular, the car in which the drugs were found stopped first at one apartment where drugs were reportedly being sold and then proceeded in a suspicious manner, without lights, to the location of other suspected drug activity. The occupants of the car then engaged in what appeared to the officer to be a typical drug

Case No. 2025-L-009

transaction, i.e., a quick stop with exchanges being made. Under the totality of the circumstances, we agree with the trial court that Officer Louderback had a reasonable and articulable suspicion of criminal activity justifying the temporary detention of the car and its occupants.

*Hagler* at *4.

{¶36} The Tenth District Court of Appeals determined that "the evidence in the record supports the trial court's conclusion that based on the totality of the circumstances, information known to [officers] gave rise to a reasonable suspicion that appellant's vehicle contained illegal drugs. *State v. Adams*, 2017-Ohio-7186, ¶ 35 (10th Dist.). The appellate court noted that "the trial court heard witness testimony regarding the ongoing investigation of a heroin trafficking ring, the officer's surveillance of Adams as he briefly met with a known drug dealer under circumstances which caused him to believe that a drug transaction had occurred, and the slight odor of marijuana detected on Adams's person as Adams walked away from his vehicle." *Id*.

{¶37} In this case, the trial court determined that based on the totality of the circumstances, Lt. Kemp had a reasonable suspicion that a drug transaction had taken place between McName and Chuppa based on his extensive training and experience. The trial court noted Lt. Kemp's observation of the controlled buy with McName prior to the encounter with Chuppa, and the fact that the circumstances of the controlled buy were markedly similar to the encounter with Chuppa. While Lt. Kemp could not see inside of the vehicle, the trial court determined that Lt. Kemp's reasonable suspicion was not negated.

{¶38} While not binding on this court, the United States District Court, S.D. West Virginia, Charleston Division concluded in a factually similar case that officers had

Case No. 2025-L-009

reasonable suspicion to conduct an investigatory stop of a defendant's vehicle. *Richardson v. United States*, 2019 WL 6211255, *7 (S.D.W.Va. July 8, 2019).[3] In *Richardson,* officers conducted a controlled buy from a known drug dealer at a residence and later observed Richardson approach the same residence. Similarly to the controlled buy, the defendant entered into residence and quickly exited to return to his vehicle. Officers subsequently conducted an investigatory stop of Richardson's vehicle when Richardson crossed into Ohio.

{¶39} We conclude that the evidence in the record supports the trial court's conclusion that based on the totality of the circumstances, officers had reasonable suspicion to conduct the investigatory stop.

## Search of the Vehicle

{¶40} Chuppa next argues that the trial court erred when it determined that law enforcement officers had probable cause to search the vehicle under the automobile exception of the search warrant requirement. Chuppa alleges that "there was absolutely no evidence that would support a finding of probable cause by an objective law enforcement officer." We disagree.

{¶41} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const., amend. IV. Article I, Section 14 of the Ohio Constitution is virtually identical to this language, and it affords the same protections. *State v. Hoffman*, 2014-Ohio-4795, ¶ 11. "The touchstone of both is

---

3. The federal district court was reviewing Richardson's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 wherein Richardson argued that his trial counsel was ineffective for failing to file a motion to suppress based upon the alleged improper traffic stop.

Case No. 2025-L-009

reasonableness." *State v. Brown*, 2020-Ohio-5140, ¶ 8 (11th Dist.). *See also State v. Ellis*, 2025-Ohio-1014, ¶ 25 (11th Dist.).

{¶42} "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Footnote omitted.) *Katz v. United States*, 389 U.S. 347, 357 (1967). The State has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement when a defendant moves to suppress evidence recovered during a warrantless search. *State v. Banks-Harvey,* 2018-Ohio-201, ¶ 18.

{¶43} Evidence obtained by searches and seizures that violate the Fourth Amendment must be excluded. *State v. Adams*, 2015-Ohio-3954, ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643 (1961) (extending the exclusionary rule to the states). "'The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment.'" *State v. Eggleston*, 2015-Ohio-958, ¶ 17 (11th Dist.), quoting *State v. Casey*, 2014-Ohio-2586, ¶ 29 (12th Dist.), citing *Weeks v. United States*, 232 U.S. 383, 394, (1914) and *Mapp v. Ohio*, 367 U.S. 643, 649 (1961); *see also Ellis* at ¶ 25-27.

{¶44} One such exception to the warrant requirement is the automobile exception. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." (Citations omitted.) *State v. Moore*, 90 Ohio St.3d 47, 51 (2000); *see also State v. Welch*, 18 Ohio St.3d 88, 91 (1985), citing *Carroll v. United States*, 267 U.S. 132, 155-156 (1925) ("a warrantless search of an automobile stopped by police officers who had probable cause to believe

Case No. 2025-L-009

the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment"). There is no need to demonstrate that a "separate exigency" exists to justify the search under the automobile exception. *State v. Ivery*, 2012-Ohio-1270, ¶ 23 (11th Dist.), citing *Maryland v. Dyson,* 527 U.S. 465, 466 (1999). "'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.'" *Id.,* quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940, (1996), citing *California v. Carney*, 471 U.S. 386, 393 (1985). "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *State v. Moore*, 2000-Ohio-10, ¶ 19.

{¶45} "In the context of an automobile search, probable cause has been defined as 'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Rath*, 2023-Ohio-2118, ¶ 19 (11th Dist.), quoting *State v. Kessler*, 53 Ohio St.2d 204, (1978), quoting *Carroll* at 149. "'The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted a search.' (Citation omitted.)" *Rath* at ¶ 19, quoting *State v. Huber*, 2019-Ohio-270, ¶ 20 (11th Dist.).

{¶46} Here, the trial court determined that probable cause existed based on the facts and what Lt. Kemp knew at the time, to believe that Chuppa's vehicle contained drugs that were purchased from McName in the Dollar General parking lot. We agree. At the time of the search, officers observed a controlled buy between McName and another individual in a Target parking lot. Officers knew McName resided in another county.

Case No. 2025-L-009

Officers then observed McName travel to another parking lot, at the Dollar General store. Chuppa exited the store with a yellow shopping bag. Similarly to the controlled buy, officers observed Chuppa approach McName's vehicle and enter on the passenger side. After approximately 15 minutes, Chuppa exited the car with the yellow bag and returned to her vehicle. Based upon the information known to officers, including the similarities and proximity of the earlier controlled buy, officers had probable cause to believe that Chuppa purchased drugs from McName and that those drugs were inside her vehicle.

{¶47} "'[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" *Rath*, 2023-Ohio-2118, at ¶ 19 (11th Dist.), quoting *State v. Vega*, 2018-Ohio-4002, ¶ 13, quoting *United States v. Ross*, 456 U.S. 798, 825 (1982). Because officers had probable cause to believe Chuppa's vehicle contained drugs, officers could search the contents of the vehicle, including the Dollar General bag Chuppa carried during her encounter with McName.

{¶48} As such, the evidence in the record supports the trial court's conclusion that officers had probable cause to search the vehicle in accordance with the automobile exception to the search warrant requirement.

### Chuppa's Statements to Police

{¶49} Chuppa next contends that the trial court erred when it denied her motion to suppress statements made to the police after her arrest.

{¶50} In the trial court in her motion to suppress, Chuppa argued, without specificity, that her statements to police should be suppressed. The trial court determined that Chuppa did not identify any incriminating statements that were made prior to

Case No. 2025-L-009

receiving her Miranda rights. Further, Chuppa did not identify any incriminating statements either in the court below or on appeal.

{¶51} Chuppa asserts, albeit briefly, that any statements made after her arrest must be suppressed as fruit of the poisonous tree. Generally, "[i]f the seizure is unlawful, any evidence obtained after the unlawful seizure must be suppressed as the 'fruit of the poisonous tree." *State v. Jones*, 2010-Ohio-2854, ¶ 21 (10th Dist.), quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). As addressed above, the investigatory stop and search of the vehicle were proper, thus, the "fruit of the poisonous tree" doctrine is inapplicable.

{¶52} As such, the trial court's factual findings are supported by the record. Upon application of the law to the facts, we conclude that the trial court did not err when it denied appellant's motion to suppress evidence.

## Conclusion

{¶53} Chuppa's sole assignment of error is without merit. As such, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit.  It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE MATT LYNCH,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-009